JOHN S. LOCOSHONAS AND ANOTHER v.
ST. PAUL MERCURY INSURANCE COMPANY.

177 N. W. (2d) 805.

May 22, 1970—No. 42053.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Curtis D. Forslund,* for appellants.

*Price & Dunlap* and *William H. Price, Jr.,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment denying plaintiffs, John S. and Elizabeth Locoshonas, recovery on a fire insurance policy issued by defendant, St. Paul Mercury Insurance Company.

In 1951, plaintiff John Locoshonas purchased land in Olmsted County and began raising turkeys. In 1961 he expanded his operations by buying a second farm in Olmsted County. A barn located on the second farm is the subject matter of this litigation. At the time the seller's fire insurance on the farm expired Locoshonas purchased a fire insurance policy from John Oliphant, an agent of the C. O. Brown Agency, Inc.

Oliphant visited the farm as required by Minn. St. 1965, § 65.08,[1] and appraised the barn at $8,000. The policy was issued by defendant and is the standard fire insurance form required by state statute.

At the time Oliphant inspected the barn, it was being used only for storage. Among other things, Locoshonas was storing "brood-

---

[1] Repealed in 1967.

ers" there which he was not using in his turkey-raising business. Brooders are heating devices used to warm young turkeys during cold weather. They are so constructed that a hood goes over the top and forces the heat to the floor where the turkeys can get the benefit of it.

Locoshonas had had experience in insuring farm buildings where brooders or other heating devices were being used. He knew that to cover the extra risk a higher premium was necessary. The fire policy he took out on the barn did not include the extra premium for using brooders.

On February 19, 1966, the barn was totally destroyed by fire. On the day prior to the fire, Locoshonas and his hired hand, Robert Priess, were working in the barn and, as was their habit when working there on cold days, they lit two of the brooders to provide heat. The hoods were taken off and the heat flowed up so they could warm themselves.

While working on a battery Locoshonas was sprayed in the eye with acid. He went immediately to the hospital where he was treated. He did not go back to the barn until early the next morning when he was notified of the fire.

Priess, the hired hand, finished working that day and left, forgetting to extinguish the brooders. He had a standing order to always turn off the brooders but apparently forgot to do so. This was the only time, to Locoshonas' knowledge, that the brooders had been left burning and unattended.

The insurance company refused to pay and plaintiffs brought this action. In answer to a special verdict, the jury found that the hazard of fire was increased by means within the control and knowledge of the insured, and that use of the barn on February 18 and 19, 1966, was usual and incidental to the occupancy of the barn.

The trial court then made findings of fact and conclusions of law favorable to defendant, and judgment was entered denying plaintiffs recovery.

The pertinent clauses of the fire insurance policy are the in-

creased-risk clause and the work-and-materials clause. The increased-risk clause provides that the company shall not be liable for any loss occurring when the hazard or risk of fire was increased by any means within the control or knowledge of the insured. The work-and-materials clause states in part:

"* * * The use of brooders, heating stoves or portable heating devices of every description (other than electric light or electric heat bulbs) used as brooders for poultry; incubators (except those having a capacity of not over 2,000 eggs) is prohibited in any insured building or any building containing property insured hereunder, unless permission therefor is granted by specific endorsement hereon and additional premium charged therefor. Any violation of the conditions of this clause which causes or contributes to any loss by fire shall suspend the insurance on any building or contents therein involved in such loss."

The trial court based its decision primarily on the second clause.

■ On this appeal plaintiffs argue that the work-and-materials clause prohibits the use of brooders as brooders and does not apply when they are used to warm human beings. As the trial judge pointed out, the risk is the same whether poultry or human beings were being warmed. It is unreasonable to limit the application of the clause to brooders used as brooders when the danger is as great however they are used.

Moreover, the wording of the clause does not support the construction plaintiffs give it. The relevant portion prohibits the "use of brooders, heating stoves or portable heating devices of every description * * * used as brooders for poultry." The reasonable interpretation of this clause is that any type of heater, including brooders, that can be used as a brooder for poultry is prohibited. It is not the use to which the device is actually put, but the use for which it is designed or to which it can be put that determines whether or not it is prohibited. If the device is designed for use as a brooder or can be put to that use, the insurer

has provided that its use will suspend the policy unless the insurer consents to its use and a higher premium is paid. In this case brooders were used in the barn contrary to the express provisions of the insurance policy.

■ This clause can relieve the insurer of liability only if the use of the brooders "caused or contributed" to the loss. The trial judge made no express finding as to the cause of the fire. Plaintiffs argue that this requires reversal and a new trial.

While it is true that the court did not expressly state that the lighted and unattended brooders caused or contributed to the fire, this is implicit in his other findings. Board of First Congregational Church v. Cream City Mutual Ins. Co. 255 Minn. 347, 96 N. W. (2d) 690. Finding of fact 4 states:

"That on the night of February 18, 1966, the brooder stoves were left lighted and unattended and in the early morning hours of February 19, 1966, the barn was totally destroyed by fire."

This is all that could be known of the fire because no one was present when it started. This finding has implicit within it the finding that the lighted and unattended brooders caused the fire.

In Rochester Wood Specialties, Inc. v. Rions, 286 Minn. 503, 176 N. W. (2d) 548, plaintiff sued for damages alleging negligence on the part of defendant in causing the fire. The jury found for plaintiff and the court granted judgment notwithstanding the verdict for defendant. While the fact situation in that case was not the same as in the instant case, we did say that in an action for a fire loss the burden of proof is on the plaintiff to establish the origin of the fire and that defendant was not required to do so. We also said that the fact is to be established by proof and not by speculation or conjecture based solely on the occurrence of the fire and that the proof need not be direct but must be such as to justify an inference of fact.

While there is no direct proof of the cause of the fire in the case before us, it can be said that there was every reasonable in-

ference that the fire was caused by leaving the lighted brooders unattended.

Because the work-and-materials clause relieves the insurer of liability, it is unnecessary for us to consider the effect of the increased-risk clause.

Plaintiff is the victim of an unfortunate set of circumstances which resulted in the loss of his barn. Although he knew that using brooders in insured buildings required payment of an extra fire insurance premium, he nevertheless repeatedly used brooders in the barn until the negligence of his hired hand allowed them to remain lighted overnight. The insurance policy clearly prohibits their use. Under these circumstances we must affirm the decision of the trial court denying recovery.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.